IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| TRACI THIESEN | § | |
| | § | |
| v. | § | Case No. 6:10-cv-496 |
| | § | |
| ROYAL NEIGHBORS OF AMERICA, | § | |
| KANSAS LIFE INSURANCE AGENCY, | § | |
| and SCOTT J. TAJCHMAN | § | |

## ORDER ON MOTION TO REMAND

Before the Court is Plaintiff Traci Thiesen's ("Plaintiff") Opposed Motion to Remand and Brief in Support (Doc. No. 12) for lack of subject matter jurisdiction. The issue presented is whether Plaintiff "fraudulently joined" parties in an effort to defeat federal jurisdiction. Having fully considered the parties' arguments, the applicable law, and for the reasons stated below, the Court is of the opinion that Plaintiff's Motion is meritorious and should be **GRANTED**.

**I. Procedural History**

Plaintiff, a Kansas citizen, originally filed this action against an Illinois Defendant, Royal Neighbors of America ("RNA"), and two Kansas citizens, Defendants Kansas Life Insurance Agency ("KLIA") and Scott J. Tajchman (collectively "Defendants") in the 87th Judicial District Court of Anderson County, Texas. Plaintiff alleges that the underlying accident giving rise to this insurance dispute occurred in Anderson County. Plaintiff asserted several claims, including wrongful refusal to pay death benefits under a life insurance policy against Defendant RNA, statutory claims under the Texas Insurance Code against Defendant RNA, and claims of negligence and statutory violations

against Defendants KLIA and Tajchman.

Defendant RNA timely removed the action to this Court under 28 U.S.C. § 1441 on the basis of diversity jurisdiction alleging improper joinder by Plaintiff. Defendant RNA asserted that the non-diverse defendants — Defendants KLIA and Tajchman — had been fraudulently joined to destroy diversity. Thus, Defendant RNA argued that the improperly joined Kansas defendants should be ignored for diversity purposes. Plaintiff timely filed a motion to remand, denying Defendant RNA's accusations.

**II. Factual Allegations**

On January 25, 2010, Plaintiff and her late husband, Josh Thiesen ("Mr. Thiesen"), met with Defendant KLIA's insurance agent Audrey Miller ("Agent Miller") to discuss life insurance for Mr. Thiesen. Defendant Tajchman owned and operated Defendant KLIA during Agent Miller's employment. During their meeting, Mr. Thiesen completed and signed an application for a Defendant RNA term life insurance policy with a death benefit of $750,000. The Agreement/Acknowledgment section of the application included the following language:

> I understand and agree that if the first payment is at least equal to the full amount of the first annual, semi-annual, quarterly, or monthly premium, the life insurance certificate applied for will be effective on the date of the application and continue in force until the applicant is notified in writing of an adverse underwriting decision and all unearned premiums are refunded. The certificate will not be in effect if: 1) the insured commits suicide; 2) the application contains material misrepresentations or is fraudulently completed; or 3) *if any check, draft, or other request for payment of the first premium is not honored for payment when presented.*

(emphasis added)

As part of the application, Mr. Thiesen checked a box by the instruction, "[d]raft first

payment" and included language in the additional details section to "[d]raft payments on the second of each month." Mr. Thiesen also completed and signed an "Authorization for Pre-Authorized Collection Plan" form, which authorized Defendant RNA to initiate automatic withdrawals from Mr. Thiesen's checking or savings account. A blank copy of a Bank of America deposit check with the Thiesens' personal address information and account number was also tendered to Agent Miller as part of the application. After the meeting, Agent Miller allegedly failed to give them the original "Conditional Receipt,"[1] which she was required to do under Kansas law. Just over a week later, on February 5, 2010, Mr. Thiesen died in an accident in Anderson County.

Jeff Hinkle — a family friend of the Thiesens' — helped get Mr. Theisen's affairs in order after Mr. Thiesen's passing. Mr. Hinkle discussed Mr. Theisen's application with Agent Miller. Agent Miller allegedly confirmed that Mr. Thiesen had authorized payment of premiums through electronic draft from his bank account and that electronic draft was a common practice for paying life insurance premiums. Agent Miller additionally noted that Mr. Theirsen's application was complete.

Agent Miller did not submit Mr. Thiesen's application at the time it was executed. Instead, Defendant Tajchman submitted Mr. Theisen's application to Defendant RNA twelve days after Mr. Thiesen signed it. The Thiesens' bank was never presented with a request for payment. On March 5, 2010, a month after Mr. Thiesen's death, Defendant RNA acknowledged Plaintiff's claim for death benefits and informed her it would investigate her claim. Several months later, Defendant RNA denied Plaintiff's claim, asserting that 1) the initial premium payment was not submitted as

---

[1] A "Conditional Receipt" is a receipt given to an individual who has submitted an application for individual life insurance and the initial premium. It provides the individual with coverage so long as all of the conditions of the receipt are satisfied. *See* K.S.A. 40–451.

part of the application; 2) the original Conditional Receipt was not submitted with Plaintiff's claim; and 3) the application was submitted to Defendant RNA twelve days after the date on the application. Plaintiff consequently filed this suit primarily alleging wrongful refusal to pay death benefits under a life insurance policy.

**III. Legal Standard**

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377(1994). A party may remove an action to federal court if the court possesses subject matter jurisdiction. 28 U.S.C. § 1441(a). The removing party has the burden of demonstrating that removal was proper and that all of the prerequisites of federal jurisdiction exist. *Manguno v. Prudential Prop. & Cas. Inc. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). In determining whether a court can exercise jurisdiction after removal, courts consider the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

Federal jurisdiction extends to civil matters where (1) diversity of citizenship exists, and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). "It is well-established that the diversity statute requires 'complete diversity' of citizenship: A district court cannot exercise diversity jurisdiction if one of the plaintiffs shares the same state citizenship as any one of the defendants." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003). But when a party alleges fraudulent or improper joinder, a court should disregard the citizenship of the improperly joined parties. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572–73 (5th Cir. 2004)

(*en banc*). "The party seeking removal bears a heavy burden of proving that the joinder of the [non-diverse] party was improper." *Id.* at 574.

"Since the purpose of the improper joinder inquiry is to determine whether or not the [non-diverse] defendant was properly joined, the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Smallwood*, 385 F.3d at 573. As such, there are two ways that a diverse defendant seeking removal can demonstrate improper joinder: "(1) actual fraud in the pleading of the jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003). When only the second alternative is at issue, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against [the non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against [the same state] defendant." *Smallwood*, 385 F.3d at 573.[2] Thus, "there must be a *reasonable* possibility of recovery, not merely a *theoretical* one." *Ross v. Citifinancial Inc.,* 344 F.3d 458, 462 (5th Cir. 2003). In coming to its decision, the Court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Guillory v. PPG Indus. Inc.,* 434 F.3d 303, 308 (5th Cir. 2005) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A Dec. 1981). Additionally, "any ambiguities of state law must be resolved in the plaintiff's favor." *McKee v. Kan. City S. Ry. Co.,* 358 F.3d 329, 334 (5th Cir. 2004).

In determining whether the plaintiff has a reasonable basis for recovery under state law,

---

[2] In this case, there is no allegation of actual fraud in the pleading of the jurisdictional facts, therefore, the Court's discussion will focus solely on the second prong of the improper joinder analysis.

"[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the [underlying state] complaint to determine whether the complaint states a claim under state law against the [non-diverse] defendant." *Smallwood*, 385 F.3d at 573. Generally, there is no improper joinder when a plaintiff's claims can survive a 12(b)(6) challenge. *Id.* In limited cases "in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder" the court may exercise its discretion and "pierce the pleadings and conduct a summary inquiry" to consider summary judgment-type evidence. *Id.* Under such circumstances, discovery should be narrowly focused, and the summary inquiry should be limited to identifying the "discrete and undisputed facts that would bar a plaintiffs' [sic] recovery against [the non-diverse] defendant; anything more risks 'moving the court beyond jurisdiction and into a resolution of the merits.'" *Anderson v. Ga. Gulf Lake Charles, LLC*, 342 F. App'x 911, 916 (5th Cir. 2009) (quoting *Smallwood*, 385 F.3d at 573–74).

**IV. Discussion**

Here, the parties do not dispute that Plaintiff, Defendant KLIA, and Defendant Tajchman are all citizens of Kansas and that Defendant RNA is a citizen of Illinois. Unless Defendants can show that Defendant KLIA and Defendant Tajchman were improperly joined, the Court lacks subject matter jurisdiction over the controversy.[3] Defendants allege that Defendant KLIA and Defendant Tajchman were improperly joined for the purpose of destroying complete diversity. Here, the issue of improper joinder depends upon whether any reasonable basis exists for a state-law cause of action against either Defendant KLIA or Defendant Tajchman.

---

[3] The Defendants do not contest the amount in controversy requirement.

Plaintiff's state court petition sets forth two causes of action against Defendant KLIA and Defendant Tajchman: 1) Plaintiff alleges unconscionable conduct and misrepresentations under Chapter 541 of the Texas Insurance Code; and 2) vicarious liability for negligence of Agent Miller. Defendants contend that Plaintiff has failed to allege any specific facts as to Defendant KLIA or Defendant Tajchman sufficient to form the basis of a state claim. Accordingly, Defendants maintain that Plaintiff failed to make the required "factual fit" between her allegations and her pleaded theory of recovery. *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) ( finding that "whether the plaintiff has stated a valid state law cause of action depends upon and is tied to the factual fit between the plaintiffs' [sic] allegations and the pleaded theory of recovery."). The Court disagrees.

Under the 12(b)(6)-type assessment used when deciphering an improper joinder allegation, a petition "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level ... on the assumption that all of the allegations in the complaint are true." *Id.*

In this case, Plaintiff's state court petition alleges Defendant Tajchman is vicariously liable for the negligence of his employee, Agent Miller. Defendants respond that Defendant Tajchman cannot be vicariously liable for Agent Miller because Defendant Tajchman was not involved in the sale of the insurance policy and that Agent Miller was not Defendant Tajchman's employee. However, paragraph twenty-three of the state court petition states that Agent Miller "left her employment with Tajchman shortly after learning of Josh's death." The state court petition, also in paragraph twenty-three, goes on to state that it was Defendant Tajchman who submitted Mr. Thiesen's policy application to Defendant RNA. Taking all of Plaintiff's factual allegations as true,

Defendant's position is untenable. *See Gasch v. Hartford Accident and Indem. Co.,* 491 F.3d 278, 281 (5th Cir. 2007) (explaining that a court must "resolve all contested factual issues and ambiguities of state law in favor of the plaintiff.").

Defendants also argue that Plaintiff's claims apply the wrong law. Defendants allege that all the events giving rise to this controversy, specifically Agent Miller's alleged negligence, occurred in Kansas, and therefore, Kansas law should be applied. Conversely, Plaintiff argues for application of Texas law. The Court finds it unnecessary to reach the conflict of laws issue because an action for negligence against an insurance agent exists under both the laws of Kansas and Texas. Negligence is established by showing a legal duty owed by one person to another, a breach of that legal duty, proximate causation, and damages. *Morin v. Moore*, 309 F.3d 316, 326 (5th Cir. 2002); *McCabe v. Hoch*, 216 P.3d 720, 751–52 (Kan. Ct. App. 2009). Where there is no duty, there can be no claim for negligence. *Critchfield v. Smith*, 151 S.W.3d 225, 230 (Tex. App. – Tyler 2004, pet. denied).

In Kansas, "[a]n insurance agent or broker who undertakes to procure insurance for another owes to the client the duty to exercise the skill, care and diligence that would be exercised by a reasonably prudent and competent insurance agent or broker acting under the same circumstances." *Marshel Invs., Inc. v. Cohen*, 634 P.2d 133, 141 (Kan. Ct. App. 1981).. *Marshel* referred to this as the "exercise of duty." *Id.* As Plaintiff argues, Kansas recognizes "an action for negligence in tort" based on an insurance agent's failure to procure insurance coverage. *Casas v. Farmers Ins. Exch.*, 130 P.3d 1201, 1207 (Kan. Ct. App. 2005). Texas similarly recognizes a cause of action for negligence against an insurance agent. "Under well-established Texas law, an insurance agent who undertakes to procure insurance for another owes his client the common-law duties to use reasonable

diligence in attempting to place the requested insurance and to inform the client promptly if he is unable to do so." *Leigh v. Kuenstler,* No. 14-08-00245-CV, 2009 WL 3126538, at *3 (Tex. App. – Houston [14th Dist.] Oct. 1, 2009, no pet.) (mem. op); *see Sonic Sys. Int'l, Inc. v. Croix*, 278 S.W.3d 377, 389 (Tex. App. – [14th Dist.] 2008, pet. denied) (reiterating the legal standard for a negligence cause of action against an insurance agent who undertakes to procure insurance).

Even though negligence is a viable allegation against an insurance agent under both Kansas and Texas law, a connection between Agent Miller and Defendant Tajchman must be established to formulate vicarious liability. The term vicarious liability, or *respondeat superior*, is generally

> applied to legal liability which arises solely because of a relationship and not because of any actual act of negligence by the person held vicariously liable for the act of another. It is also referred to as imputed negligence or imputed liability. Vicarious liability depends upon the relationship of the parties, such as employer and employee or principal and agent. In such cases, the employer or principal is held liable for the negligent act of the employee or agent solely by reason of the relationship and not because the employer or principal actually committed an act of negligence.

*Saint Paul Fire and Marine Ins. Co. v. Tyler*, 974 P.2d 611, 616–17 (Kan. Ct. App. 1999) (quoting *Leiker v. Gafford*, 778 P.2d 823, 844 (Kan. 1989)) (overruled on other grounds); *see also Vecellio Ins. Agency, Inc. v. Vanguard Underwriters Ins. Co.,* 127 S.W.3d 134, 139 (Tex. App. – Housto [1st Dist.] 2003, no pet.).

In the instant case, Plaintiff's state court petition clearly identifies and alleges Defendant Tajchman as Agent Miller's employer. *See Campbell v.Wells Fargo Bank, N.A.,* 781 F.2d 440, 442 (5th Cir. 1986) (requiring liberal construction of well-pleaded facts in favor of the plaintiff). The state court petition also refers to Defendant Tajchman using the notation "Tajchman, d/b/a KLI."[4] Although Defendants allege that Agent Miller was actually an employee of KLIA and not Mr.

---

[4] Plaintiff's state court petition designates Kansas Life Insurance Agency as "KLI."

Tajchman, at this point in the proceedings the Court finds the distinction irrelevant. The designation "doing business as" or "d/b/a" is merely a descriptive indication of a person or corporation that does business under some alternative name. *See Scottsdale Ins. Co. v. Knox Park Constr., Inc.*, 488 F.3d 680, 688 n.5 (5th Cir. 2007) (citing *Dillard v. Smith*, 205 S.W.2d 366, 367–68 (Tex. 1947) (finding that "a person doing business under an assumed name can be sued under the assumed name, his natural name, or both."). Therefore, the recitation in the state court petition of Defendant Tajchman as Agent Miller's employer is sufficient even if she was actually an employee of KLIA. *See Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 634 n.2 (4th Cir. 2002) (quoting *Bauer v. Pounds,* 763 A.2d 499, 503 (Conn. App. Ct. 2000) (holding that "[i]t appears well settled that the use of a fictitious or assumed business name does not create a separate legal entity and that the designation d/b/a is merely descriptive of the person or corporation who does business under some other name."). Furthermore, Defendant Tajchman's own affidavit indicates that he is the president and sole stockholder of Defendant KLIA. For purposes of removal, Plaintiff has sufficiently shown that at the time of the incident giving rise to this suit, Defendant Tajchman and Agent Miller were engaged in an employer-employee relationship, thereby establishing a viable claim for vicarious liability.[5] *See Lozada v. Farrall & Blackwell Agency, Inc.,* No. 08-08-00262-CV, 2010 WL 3373912, at *9–10

---

[5] Defendants also contend that Agent Miller was neither an employee nor agent of Mr. Tjachman, but rather an independent contractor. Agent Miller, in her affidavit, even states that she was an independent contractor. Plaintiff's state court petition repeatedly refers to Agent Miller as Mr. Tajchman's employee. Because this fact is disputed between the parties, it is resolved in favor of Plaintiff. At the very least, Plaintiff has established a reasonable basis for a cause of action. *See Brown v. Total E & P USA Inc.,* 341 F. App'x 24, 25 (5th Cir. 2009) (quoting *Coulter v. Texaco, Inc.,* 117 F.3d 909, 912 (5th Cir. 1997)) ("[A] principal ... cannot be liable for injuries resulting from the negligent acts of an independent contractor ... unless ... the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those act."); *D. Houston, Inc. v. Love,* 92 S.W.3d 450, 454 (Tex. 2002)*.*

(Tex. App. – El Paso Aug. 25, 2010, no pet.) (discussing principal liability based on actual or apparent authority).

In sum, because a cause of action for negligence against an insurance agent exists under the laws of both Kansas and Texas and because Plaintiff has pleaded adequate facts establishing vicarious liability, the Court has a reasonable basis to predict that Plaintiff can recover against Defendant Tajchman and Defendant KLIA. As such, the Court finds that remand is warranted.

## V. Conclusion

Because there is a non-frivolous, reasonable basis for predicting that Plaintiff might be able to recover against Defendants KLIA and Tajchman, the Court concludes that Defendants have not carried the heavy burden of demonstrating that Defendants KLIA and Tajchman were improperly joined. Given that Defendants KLIA and Tajchman, both Kansas citizens, were not improperly joined, the parties lack complete diversity because Plaintiff is also a Kansas citizen. As a result, the Court is without subject matter jurisdiction to hear this controversy.

Accordingly, Plaintiff's Motion to Remand (Doc. No. 12) is hereby **GRANTED** and the case is **REMANDED** to the 87th Judicial District Court of Anderson County, Texas.

**It is SO ORDERED.**

**SIGNED this 23rd day of November, 2010.**

MICHAEL H. SCHNEIDER
UNITED STATES DISTRICT JUDGE